IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MCWHORTER, | ) | CASE NO. 1:22-CV-01591-BMB |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN |
| | ) | BRENNAN |
| v. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Defendant. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

## I.     INTRODUCTION

Plaintiff William McWhorter ("Mr. McWhorter") seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated September 8, 2022). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.    PROCEDURAL HISTORY

On February 11, 2020, Mr. McWhorter filed his applications for DIB and SSI, alleging an onset date of December 31, 2001. (Tr. 337, 346). In his Disability Report, Mr. McWhorter listed the following conditions that he claimed prevented him from working: respiratory problems; heart problems; hypertension; Raynaud's; sinus tachycardia; gastritis; type II diabetes; heart disease; angina; severe allergies; asthma; gastroesophageal reflux disease ("GERD"); hardening of the

arteries; urinary tract infection; post-traumatic stress disorder ("PTSD"); cardiac stings; lower back problems (leg numbness); and acute laryngitis. (Tr. 372).

The Social Security Administration ("SSA") denied Mr. McWhorter's applications initially and upon reconsideration. (Tr. 200-03, 220-21). Mr. McWhorter requested a hearing before an administrative law judge ("ALJ"). (Tr. 262-64). The ALJ held a telephonic hearing on May 5, 2021, at which Mr. McWhorter was represented by counsel. (Tr. 167). During the hearing, Mr. McWhorter, through counsel, amended his alleged onset date to January 28, 2020. (Tr. 39). After Mr. McWhorter experienced problems speaking clearly in light of breathing issues, the ALJ rescheduled the hearing. (Tr. 179). The ALJ held a second hearing on November 17, 2021, at which Mr. McWhorter was again represented by counsel. (Tr. 36). Mr. McWhorter testified, as did an independent vocational expert ("VE"). On December 16, 2021, the ALJ issued a written decision, finding that Mr. McWhorter was not disabled. (Tr. 12). The ALJ's decision became final on March 21, 2022, when the Appeals Council declined further review. (Tr. 1).

On September 8, 2022, Mr. McWhorter filed his Complaint, challenging the Commissioner's final decision. (ECF Doc. No. 1). Mr. McWhorter asserts the following assignments of error:

(1)    The ALJ erred when he failed to find that the opinions of the treating and examining sources were consistent with and supported by the medical evidence and failed to incorporate the stated limitations in the RFC.

(2)    The ALJ committed harmful error when he failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of McWhorter's symptoms precluded him from engaging in substantial gainful activity on a full-time and sustained basis.

(3)    The ALJ erred in that substantial evidence did not support the RFC finding that McWhorter could perform work at the light level of exertion with frequent exposure to pulmonary irritants.

(ECF No. 6, PageID # 5368).

## III.    BACKGROUND

A.    **Personal, Educational, and Vocational Experience**

Mr. McWhorter was born in 1973 and was 46 years old on the alleged onset date. (Tr. 346).

He has never married. (Tr. 338). Mr. McWhorter graduated from high school. (Tr. 175). He does

not have any relevant prior work. *Id*.

B.    **Relevant Hearing Testimony**

1.    *Mr. McWhorter's Testimony*

At the May 5, 2021 hearing, Mr. McWhorter testified that he has essentially been in a

wheelchair since 2016, and that he has been upstairs in his house for almost three and a half years

because of allergies, asthma, and chronic obstructive pulmonary disease ("COPD"). (Tr. 177). He

testified that he does not go outside and that someone needs to push him in a wheelchair to and

from his appointments. *Id*.  He also testified that he uses a nebulizer two to five times per day on

four or five days a week. (Tr. 178). He further testified that he needs to take Benadryl and use an

EpiPen if he encounters someone with grass on them, and that he has been rushed to the hospital

with anaphylaxis. *Id*. Mr. McWhorter also testified that he is frequently up at night with a nebulizer

and a respirator. (Tr. 176). Mr. McWhorter further testified that he takes pills four times a day and

takes 40 to 42 pills every day. *Id*. Mr. McWhorter testified that he performs some chores, including

washing the sheets, cooking, cleaning, and some of the laundry depending on how he is feeling.

*Id*. He testified that he has a chair next to him while he is doing chores in case he needs to sit

down. *Id*.

Mr. McWhorter testified that he was still dealing with allergies (Tr. 178), and the ALJ had

difficulty hearing him throughout the hearing. Mr. McWhorter said that he had been having a "bad

moment" since the day before and was experiencing breathing issues that were impacting his

speaking. (Tr. 178). As a result, Mr. McWhorter's counsel requested that the hearing be continued

to a date when Mr. McWhorter was feeling better. (Tr. 179). The ALJ agreed to continue the

3

hearing. *Id*.

The hearing reconvened on November 17, 2021. (Tr. 36). During that hearing, Mr. McWhorter testified that he uses an inhaler three to five times per day. (Tr. 50). He testified that some days he can walk., but some days he cannot walk 20 yards. *Id*. He further testified that he sometimes takes four to five showers per day and that leaving the house exacerbates his allergies and his asthma. (Tr. 48). Mr. McWhorter also testified that he experiences headaches, and that he has COPD and has had two heart attacks. (Tr. 45). Mr. McWhorter testified that he keeps an ice bucket next to him so that he can duck his head in the bucket if he experiences tachycardia. (Tr. 46). He also testified that he recently cut his finger when he was clearing branches off of his yard. (Tr. 47). He further testified that his GERD causes him to choke and vomit, and that he vomits five to seven times per week. (Tr. 53). Finally, he testified that he uses an assistive device when necessary, but that he does not leave the house frequently. (Tr. 54).

### 2. *Vocational Expert's Testimony*

At the November 17, 2021 hearing, the ALJ asked the VE to consider a hypothetical individual with Mr. McWhorter's age, education, and job history who was limited to light work and could frequently climb ramps and stairs; only occasionally climb ladders and scaffolds; tolerate no more than frequent exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat; understand, remember, carry out, and complete tasks with no strict production-based requirement; occasionally interact with supervisors or the public at a superficial level; and adapt to routine workplace changes. (Tr. 57-58). The VE testified that the hypothetical individual could perform work existing in significant numbers in the national economy, including work as a marker, garment sorter, or classifier. (Tr. 58).

The ALJ next asked the VE if the hypothetical individual could perform work if the hypothetical individual were limited to sedentary work; could claim ramps and stairs occasionally;

and could tolerate no more than occasional exposure to humidity and wetness, dust, odors, fumes, pulmonary irritants, or extreme cold or heat. *Id*. The VE testified that the hypothetical individual could perform work as an ink printer, final assembler, or hand mounter. (Tr. 59). The VE further testified that it would be work preclusive if the hypothetical individual were absent from work more than one day a month or would need to be off task more than ten percent of the time for medical issues. (Tr. 59-60).

In response to a question from Mr. McWhorter's counsel, the VE testified that if the hypothetical individual needed to take breaks every 15 to 20 minutes, the hypothetical individual could not find employment. (Tr. 60). The VE also testified that if the hypothetical individual needed to use a cane, walker, or other assistive device to ambulate the individual could not perform light work. (Tr. 60-61). Finally, the VE testified that if the hypothetical individual needed to avoid all contact with allergens of any sort, including dust and mold, the individual would not be able to perform any identified job. (Tr. 61).

### C. <u>Relevant Opinion Evidence</u>

#### 1. *Lydia Lee, M.D.*

On May 12, 2021, Dr. Lee, Mr. McWhorter's treating physician, submitted a letter stating that Mr. McWhorter had multiple chronic health problems and took a number of medications to treat his conditions. (Tr. 4931). Dr. Lee opined that "[s]ome of his conditions are significantly disabling and prevent him from being employed." *Id*.

On June 1, 2021, Dr. Lee completed a physician medical source statement. (Tr. 4927). Dr. Lee diagnosed Mr. McWhorter with supraventricular tachycardia ("SVT"); medically refractory allergies and COPD/asthma; GERD; sciatica of the left lower extremity; and left sided weakness due to CVA. *Id.* Dr. Lee opined that Mr. McWhorter's prognosis was guarded. *Id.* She further opined that Mr. McWhorter could sit and stand for 20 minutes at a time, could stand or walk for

two hours total in an eight-hour work day, and would need to walk for five minutes every thirty minutes. (Tr. 4928). Dr. Lee also opined that Mr. McWhorter would need to take unscheduled breaks every 15-20 minutes due to his COPD/asthma and SVT, and that he would need to rest 20-30 minutes before returning to work. *Id*. Dr. Lee further opined that Mr. McWhorter would need to use a cane or other hand-held assistive device, but that he would not need an assistive device all the time. (Tr. 4929). Dr. Lee also stated that Mr. McWhorter would be off task 15% of the time, would be absent from work more than four days per month, and was incapable of tolerating even low stress work. *Id*. She also opined that Mr. McWhorter needed to avoid temperature extremes, environmental toxins, and dust due to the severity of his COPD, asthma, and allergies. (Tr. 4930).

The ALJ found that Dr. Lee's opinions were unpersuasive because they were unsupported by her reliance on treatment notes and were inconsistent with other evidence in the record. (Tr. 28). The ALJ also found unpersuasive Dr. Lee's statement that Mr. McWhorter's conditions prevented him from being employed, stating that Dr. Lee was offering an opinion on an issue reserved to the Commissioner. *Id*.

### 2.    *Michael Faust, Ph.D.*

On November 23, 2020, Dr. Faust performed a consultative psychological examination of Mr. McWhorter. (Tr. 3535). Dr. Faust noted that Mr. McWhorter presented as "rather quiet, introverted, passive and depressed," but also stated that Mr. McWhorter was cooperative throughout the session. (Tr. 3538). Dr. Faust further noted that clinical observations were consistent with "a very withdrawn, despondent, and introverted individual." (Tr. 3540-41). He diagnosed Mr. McWhorter with persistent depressive disorder and opined that Mr. McWhorter would likely have "some difficulty" in maintaining regular attendance due to chronic depression. (Tr. 3541). Dr. Faust also opined that Mr. McWhorter would have some difficulty remembering and carrying out instructions; some limitations in attention, concentration, persistence, and pace;

some limitations in responding appropriately to supervision or coworkers; and limitations in his ability to respond appropriately to work pressures. (Tr. 3541-42).

The ALJ found that Dr. Faust's opinion was partially persuasive to the extent Dr. Faust opined that Mr. McWhorter had limitations in interacting with others, maintaining work pace, and adopting to workplace conditions. (Tr. 28). The ALJ found that the remainder of Dr. Faust's opinion was presented in a vague and conclusory form and lacked specific occupational limitations for the ALJ to consider. *Id*.

### 3.    *State Agency Medical Consultants*

On May 4, 2020, Barry Stoler, M.D. opined on initial review that Mr. McWhorter was limited to occasionally lifting or carrying 20 pounds; frequently lifting or carrying 10 pounds; sitting, standing, or walking six hours in an eight-hour work day; and pushing or pulling without limits. (Tr. 195). Dr. Stoler also opined that Mr. McWhorter could climb ramps or stairs frequently; climb ladders, ropes, or scaffolds occasionally; and balance, stoop, kneel, crouch, or crawl without limits. (Tr. 196). Dr. Stoler further opined that Mr. McWhorter needed to avoid all exposure to fumes, odors, dusts, gases, and poor ventilation and needed to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, and hazards. (Tr. 197). Dr. Stoler opined that Mr. McWhorter's allergies were severe and that he "must avoid all contact with allergens of any sort, including dust, mold." *Id.*

On September 1, 2020, Elizabeth Das, M.D. opined on reconsideration that Mr. McWhorter had no exertional, postural, or manipulative limitations. (Tr. 226). Dr. Das further opined that Mr. McWhorter needed to avoid concentrated exposure to extreme cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation. (Tr. 226-27).

The ALJ found that Dr. Stoler's opinions were persuasive except with respect to Mr. McWhorter's ability to tolerate exposure to workplace hazards and pulmonary irritants. (Tr. 26-

27). The ALJ found that Dr. Stoler's opinions regarding workplace hazards and pulmonary irritants were inconsistent with Mr. McWhorter's normal gait, range of motion, and mild-to-moderate asthma. *Id*. The ALJ found that Dr. Das's opinions were unpersuasive regarding Mr. McWhorter's exertional and postural limitations, but persuasive with respect to Mr. McWhorter's environmental limitations. (Tr. 27).

### 4. *State Agency Psychologists*

On April 28, 2020, Gary Perry, Ed.D. opined that Mr. McWhorter had no medically determinable mental impairments. (Tr. 193-94). On December 8, 2020, Todd Finnerty, Psy.D. opined on reconsideration that Mr. McWhorter had a mild limitation in his ability to understand, remember, or apply information. (Tr. 225). Dr. Finnerty also opined that Mr. McWhorter had a moderate limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. *Id*. Dr. Finnerty further opined that Mr. McWhorter was limited to work in an environment without strict time or production quotas and to an environment with only occasional social interactions that did not require interaction beyond a superficial level. (Tr. 228).

The ALJ found that Dr. Perry's opinions were unpersuasive because they were inconsistent with the results of Dr. Faust's examination. (Tr. 27). The ALJ found that Dr. Finnerty's opinions were partially persuasive because they were consistent with Dr. Faust's report and the medical evidence. *Id*. However, the ALJ also found that Dr. Finnerty did not define what the term "superficial" meant in terms of permissible interaction, which rendered Dr. Finnerty's opinions only partially persuasive. *Id*.

### 5. *Margarita Hernandez*

Mr. McWhorter's significant other, Margarita Hernandez, completed a third-party function report on April 19, 2021. (Tr. 1776). She stated that Mr. McWhorter had difficulties lifting, squatting, bending, standing, walking, sitting, kneeling, and climbing stairs. (Tr. 1781). She further stated that Mr. McWhorter had been prescribed a cane and a wheelchair, which he used often. (Tr.

1782). Ms. Hernandez wrote that Mr. McWhorter had numerous problems with breathing and his allergies. (Tr. 1784). She also stated that Mr. McWhorter showered multiple times a day and used an inhaler and a nebulizer. *Id*.

### D. Relevant Medical Evidence

On December 7, 2016, Mr. McWhorter underwent a cardiovascular stress test. (Tr. 1836).[1] Mr. McWhorter had an abnormal diastolic response to exercise and experienced anginal chest discomfort at peak stress with prompt resolution after rest. *Id*.

On December, 24, 2016, Mr. McWhorter presented to St. Francis Medical Center, where he was diagnosed with ischemic heart disease with unstable angina; familial hyperlipidemia; previous coronary stent implantation; hypertension; non-insulin-dependent diabetes mellitus; and history of statin intolerance characterized by rhabdomyolysis. (Tr. 1841). He underwent a left heart catheterization, coronary angiography, and percutaneous transluminal coronary angioplasty with drug-eluting stent. *Id*. His condition was improved on discharge. *Id*.

On September 10, 2018, while he was incarcerated, Mr. McWhorter's treating physician noted that Mr. McWhorter had a history of coronary artery disease, familial hyperlipidemia, statin intolerance, hypertension, and asthma. (Tr. 725). The treating physician noted that he had previously recommended Mr. McWhorter be switched from metoprolol tartrate to metoprolol succinate, which had been denied by reviewers, resulting in Mr. McWhorter not receiving any metoprolol for a month. *Id*. The treating physician also noted that Mr. McWhorter had been hospitalized with decompensated asthma that responded to bronchodilators. *Id*. The treating physician recommended that Mr. McWhorter's metoprolol be resumed and that he be given ice

---

[1] At the hearing before the ALJ, Mr. McWhorter alleged an amended onset date of January 28, 2020. Many of the records Mr. McWhorter cites in his merits brief significantly predate his alleged onset date. The Sixth Circuit has held that medical records prior to the alleged onset date may be relevant to the extent they shed light on whether the claimant was disabled on or after the alleged onset date. *See Deboard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006). Accordingly, I summarize the medical evidence that Mr. McWhorter has relied on prior to his alleged onset date.

for treatment of his asthma. *Id.*

On September 21, 2018, Mr. McWhorter had a pulmonary consult. (Tr. 452). He was diagnosed with severe persistent asthma, and the treating physician recommended that he stay on his existing inhaled bronchodilator regimen. *Id.* The treating physician also indicated that Mr. McWhorter did not need a CPAP machine. *Id.*

On July 18, 2019, Mr. McWhorter had a pulmonary consultation, at which he complained of severe persistent asthma. (Tr. 1636). Treatment notes stated that Mr. McWhorter had several prior hospitalizations for asthma secondary to allergic exposures to dust and paint smells. *Id.* Mr. McWhorter reported that he was using a rescue inhaler at least four to five times per day and at night. *Id.* The treating physician recommended that Mr. McWhorter receive oral steroids and remain on a "very aggressive" inhaled bronchodilator regimen. (Tr. 1636-37). The treating physician also recommended that Mr. McWhorter be transferred to a different prison location with fewer triggering agents. (Tr. 1637).

After Mr. McWhorter was released from prison, he began receiving treatment at The MetroHealth System. (Tr. 3320). On June 4, 2020, Dr. Lee noted Mr. McWhorter's diagnoses of coronary artery disease, hyperlipidemia, hypertension, diabetes, COPD, GERD, and moderate persistent asthma. (Tr. 3324). Mr. McWhorter exhibited shortness of breath and chronic transient chest pressure/tightness but no other abnormal symptoms. (Tr. 3323). On June 11, 2020, Dr. Lee prescribed Jariance for diabetes. (Tr. 3417).

On June 25, 2020, Mr. McWhorter underwent a diabetic foot exam. (Tr. 3338). Mr. McWhorter reported numbness in his feet. *Id.* On June 26, 2020, Mr. McWhorter underwent a stress test. (Tr. 3336). The stress test revealed no ventricular abnormalities and a left ventricle ejection fraction of 58%. *Id.* On the same date, examination revealed a moderate restrictive ventilatory defect that was not consistent with a diagnosis of COPD. (Tr. 3364).

On July 8, 2020, Mr. McWhorter was evaluated for allergies. (Tr. 3389). He reported severe throat itching, constant throat clearing, and postnasal drip which made him vomit. *Id*. He reported that his allergies had worsened since 2014 and had worsened again since 2017. *Id*. The treating physician stated that Mr. McWhorter would benefit from skin testing and recommended that Mr. McWhorter continue his current medications with the addition of a nasal spray twice daily, Zyrtec, and Atarax. (Tr. 3392-93).

On July 27, 2020, Mr. McWhorter presented with throat symptoms. (Tr. 3445). Mr. McWhorter was breathing comfortably with good voice quality. (Tr. 3449). The treating physician performed a fiberoptic scope. *Id*. His left nasopharyngeal tissue was extremely friable, and he had cobblestoning of the posterior pharyngeal wall. *Id*. Mr. McWhorter also had post cricoid erythema and edema. *Id*. The treating physician recommended a sinus rinse for possible allergic rhinitis/postnasal drip and continued treatment for GERD. (Tr. 3450).

On August 4, 2020, Mr. McWhorter was evaluated for asthma. (Tr. 3460). Mr. McWhorter reported that he used a rescue inhaler two to three times every other day and used a nebulizer two to six times per day. *Id*. Mr. McWhorter was positive for congestion, postnasal drip, rhinorrhea, voice change, cough, shortness of breath, and itchy eyes. (Tr. 3462). He was negative for environmental allergies, food allergies, and was not in an immunocompromised state. *Id*.

On August 5, 2020, Mr. McWhorter had a follow-up visit for his chronic rhinitis. (Tr. 3476). He reported that his symptoms had improved slightly since his prior visit. *Id*. However, he also reported that he had daily nighttime cough and woke up gasping for air; that he used a nebulizer two to six times per day; and that he used albuterol two to three times every other day. (Tr. 3476-77). On examination, he was positive for congestion, discharge, redness, cough, sputum production, and wheezing. (Tr. 3479). The treating physician opined that Mr. McWhorter's allergies and asthma were poorly controlled. (Tr. 3480).

Mr. McWhorter underwent allergy testing on August 18, 2020. (Tr. 3485). Mr. McWhorter tested positive for allergies to grass pollen, weed pollen, and mold. (Tr. 3487). The treating physician stated that Mr. McWhorter had severe allergic rhinoconjunctivitis without relief from medications and might benefit from allergy immunotherapy. (Tr. 3489). However, there was a concern Mr. McWhorter was on beta-blockers, which would interfere with epinephrine in case Mr. McWhorter had a systemic allergic reaction during allergy immunotherapy. *Id*.

On September 29, 2020, Mr. McWhorter had a telephonic follow-up visit with Dr. Lee. (Tr. 3576).  Mr. McWhorter did not display any abnormal symptoms. (Tr. 3578-79). Dr. Lee prescribed gabapentin for sciatic pain. (Tr. 3580).

On October 13, 2020, Mr. McWhorter had a telephonic follow-up visit with Dr. Lee. (Tr. 3570). Dr. Lee stated that she had spoken to Mr. McWhorter four days previously, during which he was audibly dyspneic and coughing. *Id*. Dr. Lee indicated that she had prescribed Mr. McWhorter a five-day prednisone burst. *Id*. Mr. McWhorter stated that he had been unable to start the medication because he did not have anyone to pick up the prescription. *Id*. Mr. McWhorter reported that his breathing had gotten slightly better, but that he continued to experience coughing and chest tightness. (Tr. 3571). Dr. Lee noted that Mr. McWhorter's asthma was very poorly controlled. (Tr. 3573).

On December 29, 2020, Mr. McWhorter had another telephonic follow-up visit with Dr. Lee. (Tr. 4651). Mr. McWhorter reported that his symptoms had been relatively well controlled and that he had started on new immunotherapy, which had a positive effect. (Tr. 4652). Mr. McWhorter also reported that his lower extremity swelling had been much improved with the use of compression stockings. *Id*.

On February 11, 2021, Mr. McWhorter presented for a gastroenterology consultation in light of his longstanding GERD that had not responded to maximum proton pump inhibitor

therapy. (Tr. 4642). The treating physician stated that Mr. McWhorter had a severely decreased quality of life despite taking lifestyle measures. (Tr. 4647). On February 25, 2021, Mr. McWhorter underwent a gastric emptying study. (Tr. 4789). The results of the study were normal. *Id*.

On March 12, 2021, Mr. McWhorter had another telephonic follow-up appointment with Dr. Lee. (Tr. 4638). Mr. McWhorter reported that he had been having frequent bouts of asthma when temperatures dropped earlier that month, but that his breathing was back to normal since the weather had gotten warmer. *Id*. Mr. McWhorter also reported that he was using his nebulizer only one to three times per day and that he believed his allergy therapy was helping. *Id*.

On March 29, 2021, Mr. McWhorter presented to the hospital with a gunshot wound in the arm. (Tr. 4846). Mr. McWhorter reported that he was outside working on his fence when he was shot. *Id*.

On April 12, 2021, Mr. McWhorter presented for evaluation of reflux. (Tr. 4995). On April 27, 2021, Mr. McWhorter had an upper GI double contract exam which revealed a Schatzki's ring in the distal esophagus, moderate gastroesophageal reflux, and a small type I hiatal hernia. (Tr. 5008).

On April 28, 2021, Mr. McWhorter went to the MetroHealth Allergy/Immunology Clinic after he had an anaphylaxis reaction from an allergy shot. (Tr. 5034). Mr. McWhorter reported that he was feeling better and had not had any further reactions or required an EpiPen after being discharged from the emergency room. *Id*. Mr. McWhorter reported that his allergies were worse before he received the allergy shot. *Id*. Mr. McWhorter was positive for wheezing, cough, and headache but negative for rhinorrhea, epistaxis, otalgia, and sore throat. (Tr. 5039). The treating physician stated that Mr. McWhorter had a prior instance of anaphylaxis in February 2021 and that both occurred during high pollen counts. (Tr. 5042). The treating physician also stated that Mr. McWhorter's asthma was "not controlled." *Id*.

On May 25, 2021, Mr. McWhorter went to the emergency room with mild anaphylaxis. (Tr. 5104). Mr. McWhorter reported that he walked outside, became acutely short of breath, felt his chest tighten, and became nauseous. *Id*. He reported that he had self-administered epi via an EpiPen. *Id*. Mr. McWhorter was positive for chest tightness, shortness of breath, and wheezing. (Tr. 5105). In June 2021, Mr. McWhorter's allergy shots were discontinued due to his anaphylactic reactions. (Tr. 5184). His asthma was not controlled after he discontinued allergy shots. *Id*.

On June 1, 2021, Mr. McWhorter had a follow-up visit with Dr. Lee. (Tr. 5143). Dr. Lee increased Mr. McWhorter's diabetes medication. (Tr. 5144). Mr. McWhorter also asked Dr. Lee to complete a form in connection with his application for SSI. *Id*. Dr. Lee completed the form with Mr. McWhorter. (Tr. 5145).

Mr. McWhorter underwent an endoscopic ultrasound on June 3, 2021. (Tr. 5155). The ultrasound revealed mild antral erythema suggestive of gastritis and a submucosal lesion most consistent with lipoma. (Tr. 5156).

On July 28, 2021, Mr. McWhorter had an allergy/immunology follow-up. (Tr. 5239). He reported that things had been very difficult, that he was sleeping all day, and that he was on a CPAP machine, which he did not believe was helping his symptoms. *Id*. The treating physician stated that Mr. McWhorter's symptoms were currently poorly controlled on a very high dose of daily antihistamines. (Tr. 5246).

On September 1, 2021, Mr. McWhorter received individual counseling for post-traumatic stress disorder, reporting that he lived across from a house where a quadruple shooting had occurred, and that he was experiencing an increase in hypervigilance and irritability in light of that and his own prior gunshot wound. (Tr. 5268). Mr. McWhorter's mood was anxious and irritable. *Id*. Mr. McWhorter attended subsequent sessions on September 7, 2021 and September 24, 2021. (Tr. 5275, 5326).

On September 17, 2021, Mr. McWhorter had another telephonic follow-up visit with Dr. Lee. (Tr. 5343). Mr. McWhorter reported that his sciatica pain had not been well-controlled since he discontinued his NSAIDs due to gastritis. (Tr. 5344). Mr. McWhorter also reported that he self-increased his doses of gabapentin and duloxetine to manage his pain. *Id*. Dr. Lee prescribed increased doses of gabapentin, duloxetine, amitriptyline, compression stockings, and glipizide. (Tr. 5346).

## IV.    THE ALJ'S DECISION

The ALJ first determined that Mr. McWhorter met the insured status requirements of the Social Security Act through December 31, 2006. (Tr. 17). The ALJ next determined that Mr. McWhorter had not engaged in substantial gainful activity since January 28, 2020, the alleged onset date. *Id*.

The ALJ further determined that Mr. McWhorter had the following severe impairments: diabetes mellitus; obesity; heart failure; hypertension; hyperlipidemia; asthma; obstructive sleep apnea; osteoarthrosis; spinal disorder; and a depressive disorder. (Tr. 18). However, the ALJ also determined that none of Mr. McWhorter's severe impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I. (Tr. 19).

The ALJ next determined that Mr. McWhorter had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant has retained the ability to lift and carry 20 pounds occasionally and 10 pounds frequently, as well as pushing and pulling as much as he can lift and carry. He has been limited to sitting for six hours, as well as standing and walking for a combined total of six hours, in an eight-hour workday. The claimant has been limited to climbing ramps and stairs frequently and ladders, ropes, or scaffolds occasionally. He has been limited to tolerating frequent exposure to humidity, wetness, extreme heat, extreme cold, and pulmonary irritants. The claimant has been limited to understanding, remembering, carrying out, and

completing tasks with no strict production-rate pace requirements. He has been able to adapt to occasional and superficial interactions with supervisors, coworkers, and the public, with superficial defined as involving no arbitration, mediation, negotiation, confrontation, or responsibility for the safety or supervision of others. The claimant has been limited to adapting to routine workplace changes.

(Tr. 23).

The ALJ next determined that Mr. McWhorter did not have any past relevant work. (Tr. 29). The ALJ also determined, however, that considering Mr. McWhorter's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Mr. McWhorter could perform, including work as a marker, garment sorter, or classifier. (Tr. 29). Alternatively, the ALJ found that, if Mr. McWhorter were limited to sedentary work, he could perform work as an ink printer, final assembler, or hand mounter. (Tr. 30). Accordingly, the ALJ found that Mr. McWhorter was not disabled. *Id.*

## V.     LAW & ANALYSIS

### A.     <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial

evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B.    Standard for Disability

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet

certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[2]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals a listing and satisfies the durational requirement, the ALJ must find that the claimant is disabled. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 431 (6th Cir. 2014).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). "A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250. The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-

---

[2] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq*., corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Golden*, 2018 WL 7079506 at *17. However, "[i]t is plaintiff's burden to prove the severity of her impairments, and to provide evidence establishing her RFC." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-1849, 2021 WL 4987607, at *3 (N.D. Ohio Oct. 27, 2021).

At the fourth step, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

**C.**   **Analysis**

Mr. McWhorter argues that the ALJ erred in formulating his RFC in three respects: (1) failing to adopt restrictions that Dr. Lee and Dr. Faust identified in their opinions; (2) failing to properly evaluate Mr. McWhorter's subjective reports of his limitations; and (3) finding that Mr. McWhorter could perform light work with frequent exposure to pulmonary irritants. For the reasons set forth below, I conclude that each of Mr. McWhorter's assignments of error is without merit.

*1.*   *The ALJ's Evaluation of the Medical Opinion Evidence*

Because Mr. McWhorter filed his disability claim after March 27, 2017, the "treating physician" rule, pursuant to which an ALJ was required to give controlling weight to an opinion from a treating physician absent good reason not to, does not apply. *See* 20 C.F.R. § 404.1527; *Merrell v. Comm'r of Soc. Sec.*, 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021),

*report and recommendation adopted*, 2021 WL 1214809. Instead, the current regulations stated that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). Section 404.1520c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Of the five factors, supportability and consistency are the most important, and an ALJ must explain how the ALJ considered them. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may" but "is not required to" explain how the ALJ considered the remaining factors. *Id*.

The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. *See* 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinions." *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (quoting *Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *3 (E.D. Mich. Mar. 31, 2022)). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(c)(2). "As long as the ALJ discussed the supportability and consistency of the opinion and supported his conclusions with substantial evidence within his decision, the Court will not disturb his decision." *Njegovan v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-00002-CEH, 2022 WL 1521910, at *4 (N.D. Ohio May

13, 2022).

Mr. McWhorter argues that the ALJ erred in evaluating the opinions of Dr. Lee and Dr. Faust. I analyze the ALJ's treatment of both opinion in turn.

### a. Dr. Lee

Dr. Lee opined that Mr. McWhorter was subject to a number of restrictions, including: sitting or standing for 20 minutes at a time; standing or walking for two hours total in an eight-hour work day; requiring unscheduled breaks every 15-20 minutes due to his COPD/asthma and SVT; requiring a cane or other hand-held assistive device some portion of the time; and avoiding temperature extremes, environmental toxins, and dust. (Tr. 4927-29). Dr. Lee further opined that Mr. McWhorter would be off task 15% of the time, could not tolerate even low stress work, and would be absent from work more than four days per month on average. *Id*.

The ALJ found that Dr. Lee's opinion was unpersuasive because it was inconsistent with her own treatment notes and other evidence in the record. Specifically, the ALJ stated:

> Dr. Lee's opinion is unsupported by her reliance on treatment notes documenting shortness of breath and pulmonary function testing, as treatment notes refer to improvement in his condition with treatment and the claimant stated that he could walk up to half of a mile before experiencing shortness of breath on August 4, 2020, and other treatment notes refer to his blood oxygenation typically being between 94% and 97%. Additionally, Dr. Lee's opinion is inconsistent with the claimant's normal gait, strength, and range of motion, his left ventricle ejection fraction of 58%, and the claimant's ability to ambulate without an assistive device as noted in treatment notes during the period at issue.

(Tr. 28).

The ALJ's analysis adequately addresses the supportability factor by noting that Dr. Lee's opinion was inconsistent with her own treatment notes. *See Rattliff v. Comm'r of Soc. Sec.*, No. 1:20-cv-01732, 2021 WL 7251036, at *9 (N.D. Ohio Oct. 29, 2021), *report and recommendation adopted*, 2022 WL 627055 (holding that ALJ addressed supportability factor by noting that physician's opinion was inconsistent with physician's treating notes); *Neff v. Comm'r of Soc. Sec.*,

No. 5:18 CV 2492, 2020 WL 999781, at *11 (N.D. Ohio Mar. 2, 2020) (holding that ALJ properly addressed supportability factor by noting that physician's opinion was unsupported by her own treatment notes). The ALJ also adequately addresses the consistency factor by noting that Dr. Lee's opinion was inconsistent with other evidence in the record, including Mr. McWhorter's normal gait, left ventricle ejection fraction, and ability to ambulate without an assistive device. *See Merrell*, 2021 WL 1222667 at *7 (holding that ALJ's decision to discount weight given to opinion from treating physician was supported by substantial evidence where opinion was inconsistent with evidence in the record); *Creter v. Saul*, No. 1:20-cv-00840, 2021 WL 809323, at *11 (N.D. Ohio Mar. 3, 2021) (holding that ALJ did not err where ALJ specifically cited treatment records ALJ believed were inconsistent with treating physician's opinion and explained why).[3]

Moreover, a reviewing court reads an ALJ's decision as a whole, *see Taylor v. Kijakazi*, No. 1:20-cv-01121, 2021 WL 4477865, *8 (N.D. Ohio Sept. 30, 2021), and the ALJ included a relevant discussion of Mr. McWhorter's symptoms earlier in his decision as well. The ALJ noted that Mr. McWhorter's pulmonary function testing documented an FEV of 2.83 and an FVC of 3.23 on January 14, 2020; an FEV of 2.1 on June 26, 2020; and an FEV of 2.69 and an FVC of 2.23 on August 4, 2020. (Tr. 25). The ALJ further noted that treatment notes from November 2020 reflect improvement in Mr. McWhorter's breathing with allergy treatment, and that by December 2020, his asthma was described as persistent but mild. *Id*. The ALJ also noted that, while Mr. McWhorter's blood oxygenation occasionally decreased to 90% while he was climbing stairs, it was typically 94% to 97%. *Id*. The ALJ further noted that immunotherapy improved Mr. McWhorter's asthma and that an EpiPen was effective in controlling his most severe allergy

---

[3] The ALJ also rejected Dr. Lee's opinion that Mr. McWhorter's conditions were "significantly disabling and prevent him from being employed," finding that Dr. Lee's opinion was on an issue reserved to the Commissioner. (Tr. 28). The ALJ's conclusion was consistent with the applicable regulations, which provide that the issue of whether a claimant is disabled or unable to work is reserved to the Commissioner and that such statements from physicians are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c). Mr. McWhorter does not challenge the ALJ's rejection of that opinion.

attacks. *Id*.

The ALJ also cited evidence with respect to Mr. McWhorter's other impairments. With respect to his cardiac condition, the ALJ noted that the record "contains no reference to any cardiac treatment during the period at issue that was more-than-conservative in nature." *Id*. The ALJ also stated that Mr. McWhorter's diabetes was controlled without long-term use of insulin. *Id*. The ALJ further noted that compression stockings had controlled Mr. McWhorter's edema in his lower extremities. *Id*. Finally, with respect to Mr. McWhorter's need for an assistive device, the ALJ noted that that treatment notes describe his gait as intact; that his strength has been normal and his range of motion full; that he reported being able to walk up to half a mile in August 2020; and that the record contained no reference to Mr. McWhorter using an assistive device during the relevant period other than during Dr. Faust's examination. *Id*.

Mr. McWhorter does not argue that the ALJ failed to address the supportability or consistency elements at all. Instead, Mr. McWhorter argues that the ALJ's evaluation was erroneous because other evidence in the record is consistent with Dr. Lee's assessment and would support a more restrictive RFC. However, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)); *see also Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision").

Here, the ALJ's evaluation of Dr. Lee's opinion is supported by substantial evidence and adequately addressed the supportability and consistency factors as mandated by the applicable regulations. Mr. McWhorter's argument that the ALJ erred in his treatment of Dr. Lee's opinion is therefore without merit.

### b.  Dr. Faust

Mr. McWhorter similarly argues that the ALJ erred in rejecting in part the opinion of Dr. Faust. In finding Dr. Faust's opinions partially unpersuasive, the ALJ stated the following:

> Dr. Faust opined that the claimant would have difficulty maintaining regular attendance at work; may have some difficulty remembering and carrying out instructions; has some limitations in attention, concentration, persistence, and work pace; some limitations in interacting with supervisors and coworkers in an employment setting; and has limitations to his ability to respond appropriately to work pressures in an employment setting . . . . Dr. Faust's opinion is presented in a vague and conclusory form and does not identify specific limitations to the degree to which specific work functions are limited by the claimant's conditions. However, to the extent Dr. Faust opined that the claimant has experienced limitations to his ability to sustain a high pace of work, interact with others, and respond to workplace pressures, his opinion is supported by the results of his examination, including the claimant's ability to persist at tasks despite mild attentiveness and his description of himself as socially avoidant. Additionally, these aspects of Dr. Faust's opinion are consistent with treatment notes and the claimant's Adult Function Report, which refer to complaints of poor concentration, increased anxiety and irritability, and difficulty coping with stress and change. Accordingly, I find Dr. Faust's opinion only partially persuasive, and then only to the extent Dr. Faust opined that the claimant has experienced limitations in interacting with others, maintaining work pace, and adapting to workplace conditions, as Dr. Faust's opinion was presented in such a vague and conclusory form that it lacks any specific limitations for me to consider.

(Tr. 28).

The ALJ thus adopted the limitations that Dr. Faust identified with particularity and rejected Dr. Faust's opinion only to the extent it was vague and conclusory. The vagueness of an opinion is a valid basis to find that the opinion is unsupported. *See Lyons v. Kijakazi*, No. 1:20-cv-1567, 2022 WL 1064070, at *7 (N.D. Ohio Jan. 10, 2022), *report and recommendation adopted*

*sub nom*, 2022 WL 610762 (holding that ALJ properly discounted medical opinion where treating physician "offers no supporting explanation in her opinion, nor does the doctor identify objective medical evidence to support the limitations assessed") (emphasis omitted).

Mr. McWhorter does not dispute either that portions of Dr. Faust's opinion was vague or that vagueness is an appropriate basis to reject an opinion from a medical provider. Instead, Mr. McWhorter again argues that the ALJ erred because other evidence in the record supports Dr. Faust's opinion. As noted above, however, a reviewing court cannot overturn an ALJ's decision simply because substantial evidence may support a contrary conclusion so long as substantial evidence also supports the ALJ's determination. I conclude that the ALJ's evaluation of Dr. Faust's opinion is supported by substantial evidence. I therefore recommend that the Court reject Mr. McWhorter's first assignment of error.

### 2.    *SSR 16-3p*

In his second assignment of error, Mr. McWhorter argues that the ALJ failed to properly apply Social Security Ruling ("SSR") 16-3p, which governs the Commissioner's evaluation of a claimant's subjective symptoms. SSR 16-3p provides that the SSA will conduct a two-step process in considering a claimant's symptoms. 2017 WL 5180304, at *3 (Oct. 25, 2017). At step one, the SSA determines whether the individual has one or more medically determinable impairments that could reasonably be expected to produce the individual's alleged symptoms. *Id*. If so, at step two, the SSA evaluates the intensity and persistence of a claimant's symptoms, such as pain, to determine the extent to which those symptoms limit the claimant's ability to work. *Id*. at *4.

With respect to a claimant's subjective statements, SSR 16-3p provides that the SSA will "consider an individual's statements about the intensity, persistence, and limiting effects of symptoms" and "will evaluate whether the statements are consistent with objective medical evidence and the other evidence." *Id*. at *6. SSR 16-3p identifies seven factors that the SSA will

consider in evaluating an individual's symptoms: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment an individual receives or has received other than medication; (6) any measures other than treatment an individual uses or has used; and (7) any other factors concerning the claimant's functional limitations and restrictions. *Id.* at *7-8. "The ALJ need not analyze all seven factors but should show that [the ALJ] considered the relevant evidence." *Phillips v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-01144-JGC, 2023 WL 4078204, at *8 (N.D. Ohio Apr. 4, 2022).

"A plaintiff does not demonstrate a violation of SSR 16-3p simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ, as an ALJ is not required to accept a claimant's subjective complaints." *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints"). Notably, "[i]t is for the administrative law judge, not the reviewing court, to judge the consistency of a claimant's statements." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 (6th Cir. 2020). However, the ALJ's determinations must be reasonable and supported by evidence in the record. *See Zingale*, 2022 WL 824148 at *8; *see also Kurman v. Comm'r of Soc. Sec.*, No. 1:20-cv-01837, 2022 WL 765072, at *3 (N.D. Ohio Mar. 14, 2022) ("The ALJ's decision . . . must be rooted in the record and must contain specific reasons for the weight given to the [claimant's] symptoms.") (quotations omitted).

Here, the ALJ found that Mr. McWhorter's "statements about the intensity, persistence, and limiting effects of his symptoms are only partially consistent with the evidence of record and do not support a finding of disability." (Tr. 24). In particular, the ALJ found that: Mr. McWhorter's pulmonary function testing was not consistent with the degree of impairment that Mr. McWhorter

identified; treatment notes from November 2020 reflect improvement in Mr. McWhorter's breathing with allergy treatment; by December 2020, his asthma was described as persistent but mild; immunotherapy improved Mr. McWhorter's asthma; an EpiPen was effective in controlling his most severe allergy attacks; the record did not reflect more than conservative cardiac treatment; compression stocks controlled Mr. McWhorter's lower extremity edema; and the record contained no reference to Mr. McWhorter using an assistive device during the relevant period other than during Dr. Faust's examination. (Tr. 25). The ALJ also considered contrary evidence, including treatment notes reflecting poor control over his asthma; imaging showing a nodule in the lower lobe of his left lung; treatment notes reflecting several emergency room or outpatient visits for exacerbation of his allergies; and evidence that Mr. McWhorter experienced symptomatic supraventricular tachycardia. (Tr. 24). However, the ALJ concluded that the evidence, taken as a whole, was not fully consistent with Mr. McWhorter's subjective reports and that the RFC properly accounted for Mr. McWhorter's limitations.

I conclude that the ALJ properly considered the evidence as a whole in applying SSR 16-3p and evaluating Mr. McWhorter's subjective statements. The ALJ's decision is therefore supported by substantial evidence. *See Young v. Comm'r of Soc. Sec. Admin.*, No. 5:21-cv-00761, 2022 WL 17546359, at *6 (N.D. Ohio Dec. 9, 2022) (holding that ALJ complied with SSR 16-3p where ALJ evaluated the intensity and persistence of claimant's symptoms and determined extent to which those symptoms limited claimant's ability to perform work activities); *Myers v. Comm'r of Soc. Sec. Admin.*, No. 1:21-CV-02381-SL, 2022 WL 18636593, at *8 (N.D. Ohio Dec. 2, 2022) (holding that ALJ complied with SSR 16-3p where ALJ considered claimant's subjective complaints of pain but did not find pain disabling), *report and recommendation adopted*, 2023 WL 369435. To the extent Mr. McWhorter believes the ALJ should have weighed the evidence differently, it is not a reviewing court's role to second-guess the ALJ's judgment. Accordingly, I

recommend that the Court reject Mr. McWhorter's second assignment of error.

### 3.    *Exposure to Pulmonary Irritants*

In his third assignment of error, Mr. McWhorter argues that the ALJ erred in concluding that he could perform light work with frequent exposure to pulmonary irritants. Mr. McWhorter cites SSR 85-15 for the proposition that, when an individual can tolerate only limited amounts of dust and other irritants, the impact on the claimant's ability to work is considerable.

SSR 85-15 provides in relevant part that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." 1985 WL 56857, at *8. SSR 85-15 further provides, however, that "[w]here an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." *Id*.

Mr. McWhorter argues that the ALJ violated SSR 85-15 because the evidence in the record demonstrated that he was precluded from exposure to dust and other allergens. This argument essentially repeats Mr. McWhorter's prior arguments that the ALJ should have found that Mr. McWhorter's impairments were more disabling than the ALJ did. For the reasons set forth above, however, I conclude that the ALJ's conclusion that Mr. McWhorter could tolerate frequent exposure to pulmonary irritants was supported by substantial evidence. I thus recommend that the Court reject Mr. McWhorter's third assignment of error.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the ALJ's decision.

Dated: <u>July 17, 2023</u>                                    <u>*s/ Jennifer Dowdell Armstrong*</u>
                                                                 Jennifer Dowdell Armstrong
                                                                 U.S. Magistrate Judge


## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).